NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-13-1014-KuBaPa |
| | ) | |
| DENNIS ADRIAN VAZQUEZ, | ) | Bk. No.   SA 09-19259-CB |
| | ) | |
| Debtor. | ) | Adv. No.  SA 09-01786-CB |
| _____ | ) | |
| | ) | |
| DENNIS ADRIAN VAZQUEZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| AAA BLUEPRINT & DIGITAL | ) | |
| REPROGRAPHICS, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Oral Argument
on November 21, 2013[**]

Filed – December 13, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Dennis Adrian Vazquez, pro se, on brief;
Mark W. Huston of Silverstein & Huston, on brief,
for appellee AAA Blueprint & Digital
Reprographics.

_____

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

[**]By order entered July 5, 2013, this appeal was deemed
suitable for submission without oral argument.

Before: KURTZ, BALLINGER[***] and PAPPAS, Bankruptcy Judges.

## INTRODUCTION

Debtor Dennis Adrian Vazquez appeals from a summary judgment excepting from discharge under 11 U.S.C. § 523(a)(6)[1] the judgment debt he owes to AAA Blueprint & Digital Reprographics ("AAA"). Vazquez also appeals from the bankruptcy court's denial of his reconsideration motion. We AFFIRM.

## FACTS

Vazquez owned and controlled a document printing, copying and digital reproduction business known as Alliance Reprographics ("Alliance"). Jimmy Ibarra, a former employee of AAA's, left AAA and immediately went to work for Alliance. Ibarra took from AAA a confidential customer price list, and he used that list to successfully solicit AAA's customers for Alliance's benefit.

AAA sued Ibarra and Alliance (but not Vazquez) in the Orange County Superior Court (Case No. 05CC07362) for misappropriation of trade secrets, unfair competition, intentional interference with contractual relations, intentional interference with prospective economic advantage, conversion and constructive trust. While the court ultimately found in favor of AAA on all of its causes of action except for conversion, it is clear from the parties' joint list of issues and the state court's statement of decision that the lawsuit focused and hinged on the

---

[***]Hon. Eddward P. Ballinger, Jr., United States Bankruptcy Judge for the District of Arizona, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

misappropriation of trade secrets cause of action. Ultimately, the state court awarded AAA $60,000 in compensatory damages, $120,000 in exemplary damages and roughly $100,000 in attorney's fees ("First State Court Judgment"). The California Court of Appeal affirmed the First State Court Judgment.

In post-judgment settlement discussions between AAA's principal Peter Bouchier and Alliance's principal Vazquez, Vazquez told Bouchier that, if Bouchier would not agree to accept $100,000 in full satisfaction of the First State Court Judgment, Vazquez would close down Alliance and open a new business across the street.

True to his word, Vazquez shortly thereafter wound down most of Alliance's operations and transferred virtually the entire business, including all of its assets, to a new company named All Blueprint, Inc. ("All Blueprint").

Based on Vazquez's conduct following entry of the First State Court Judgment, AAA sued Vazquez, his live-in girlfriend Melissa Huerta, and All Blueprint for actual and constructive fraudulent transfers, and for a determination that both Alliance and All Blueprint were the alter egos of Vazquez and Huerta. AAA filed its alter ego and fraudulent transfer lawsuit (Case No. 30-2007-00100248) in the same state court that had presided over its trade secret misappropriation lawsuit.

After a two-day bench trial, the state court issued its written findings in the form of a minute order. The state court's findings speak for themselves. Among other things, the state court found:

> Dennis Adrian Vazquez and Melissa Huerta conspired to
> fraudulently transfer assets from Alliance

3

Reprographics Inc to All Blueprint Inc for the purpose of hindering judgment creditor AAA from collecting its judgment against Alliance.

Minute Order (July 27, 2009) at p. 1.

In support of its fraudulent transfer finding, the state court also found: (1) that Vazquez threatened Bouchier that he would close down Alliance and open up a new business across the street unless Bouchier accepted a $100,000 settlement offer; (2) that Huerta formed All Blueprint "[f]our days after the statement of decision was entered" in the trade secrets misappropriation lawsuit; (3) that, over the course of a few months, Alliance transferred "virtually the entire business" including all of its assets to All Blueprint; (4) that, while Huerta supposedly owned and controlled All Blueprint and supposedly was entering into competition with Alliance, in reality Huerta and Vazquez jointly controlled All Blueprint, which was for all practical purposes "the same company as Alliance"; (5) Huerta and Vazquez formed All Blueprint and transferred all of Alliance's assets to All Blue Print "for the sole purpose of hindering [AAA's] efforts to collect its judgment"; and (6) by conducting himself in this manner, "Vazquez committed the wrongful act of hindering AAA in trying to collect the judgment." Id. at p. 2.

Based on these and related facts, the state court further held that Vazquez and All Blueprint were the alter egos of Alliance and that Vazquez and Huerta were the alter egos of All Blueprint.

With respect to damages, the state court in essence ruled that, because all three defendants would be held jointly and

4

severally liable for the full amount of the First State Court Judgment by virtue of the court's alter ego determination, the First State Court Judgment would suffice to cover AAA's compensatory damages flowing from the fraudulent transfers. The state court also declined to award any exemplary damages on account of the fraudulent transfers because AAA presented insufficient evidence to enable the state court to determine each defendant's net worth.

The state court entered its fraudulent transfer and alter ego judgment ("Second State Court Judgment") in July 2009, and Vazquez appealed that judgment.[2]

After Vazquez filed his bankruptcy case in August 2009, AAA commenced the underlying adversary proceeding objecting to Vazquez's discharge and seeking to except from discharge Vazquez's judgment debt arising from the state court judgments. Initially, AAA stated several different claims for relief; however, by the time AAA filed its operative complaint, its third amended complaint, all that remained was a single claim for relief under § 523(a)(6), seeking to except from discharge Vazquez's judgment debt as a debt arising from a willful and

---

[2]The California Court of Appeal's decision regarding the Second State Court Judgment is not properly part of the record before us because it issued that decision on April 2, 2013, after the bankruptcy court ruled and while the appeal before this Panel was pending. Nonetheless, it is worth noting that the California Court of Appeal affirmed the Second State Court Judgment in its entirety and that the California Supreme Court denied review. To the extent relevant to our decision, we can and do take judicial notice of the California Court of Appeal's affirmance of the Second State Court Judgment and the California Supreme Court's denial of review. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

malicious injury. That single claim for relief explicitly relied on the same events and conduct from which AAA's state court judgments arose.

AAA filed a summary judgment motion, in which it relied on the issue preclusive effect of the state court's findings in both state court lawsuits. Vazquez opposed the motion, but the bankruptcy court ruled in favor of AAA and granted its summary judgment motion. In essence, the bankruptcy court held that the issue preclusive effect of the state court's actual fraudulent transfer findings established that Vazquez's judgment debt arose from a willful and malicious injury. In addition to this holding, the bankruptcy court apparently adopted in its entirety AAA's proposed statement of uncontroverted facts and conclusions of law, which statement in turn was largely derived from the findings in the state court lawsuits.

After the bankruptcy court entered its order granting summary judgment, Vazquez timely filed a motion for reconsideration.[3] In that motion, Vazquez argued for the first time that issue preclusion was not applicable to the Second State Court Judgment because that judgment was the subject of a pending appeal. This argument was contrary to Vazquez's position in response to AAA's summary judgment motion. Indeed, in his

---

[3]Neither party included in their excerpts of record copies of the papers they filed in relation to the reconsideration motion. Nor did they include a copy of the court's order denying the reconsideration motion. Nonetheless, we have reviewed these documents by accessing the bankruptcy court's electronic docket. We can and do take judicial notice of the filing and contents of these documents. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

6

opposition to the summary judgment motion, Vazquez had explicitly conceded that the finality element for issue preclusion had been satisfied.

The bankruptcy court denied Vazquez's reconsideration motion, and Vazquez timely filed a notice of appeal, referencing the summary judgment but not referencing the denial of the reconsideration motion.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Did the bankruptcy court commit reversible error by applying issue preclusion and granting summary judgment against Vazquez?

Did the bankruptcy court abuse its discretion when it denied Vazquez's reconsideration motion?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's grant of summary judgment. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007).

The nondischargeability of a particular debt is a mixed question of law and fact also subject to de novo review. Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001); Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011).

We also review de novo the bankruptcy court's determination that issue preclusion is available. In re Lopez, 367 B.R. at

7

103; Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996).

Once we determine that issue preclusion is available, we review the bankruptcy court's decision to apply it for an abuse of discretion. In re Lopez, 367 B.R. at 103. We also review for an abuse of discretion the bankruptcy court's denial of the reconsideration motion. Grantham v. Cory (In re Flamingo 55, Inc.), 646 F.3d 1253, 1254 n.3 (9th Cir. 2011); First Ave. W. Bldg. LLC v. James (In re OneCast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

A bankruptcy court abuses its discretion if it does not apply the correct legal rule or if its findings of fact are illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc).

**DISCUSSION**

**A.  The Summary Judgment Ruling**

A bankruptcy court may grant a summary judgment motion when the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All facts genuinely in dispute must be viewed "in the light most favorable to the non-moving party." Scott v. Harris, 550 U.S. 372, 380 (2007). And all reasonable inferences that can be drawn in the non-moving party's favor must be so drawn. Id. at 378.

Issue preclusion applies in actions seeking to except a debt from discharge. Grogan v. Garner, 498 U.S. 279, 284 (1991). We apply California issue preclusion law to determine the preclusive

8

effect of the two California state court judgments at issue herein. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). Under California issue preclusion law, the proponent must establish the following:

> 1) the issue sought to be precluded . . . must be identical to that decided in the former proceeding; 2) the issue must have been actually litigated in the former proceeding; 3) it must have been necessarily decided in the former proceeding; 4) the decision in the former proceeding must be final and on the merits; and 5) the party against whom preclusion is being sought must be the same as the party to the former proceeding.

In re Honkanen, 446 B.R. at 382; Lucido v. Super. Ct., 51 Cal.3d 335, 341 (1990).

In addition, before applying issue preclusion, the bankruptcy court also must determine "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824-25 (9th Cir. BAP 2006) (citing Lucido, 51 Cal.3d at 342-43).

On appeal, Vazquez argues that the bankruptcy court should not have applied issue preclusion because the issues decided in the state court litigation were not identical to the dispositive factual issues underlying AAA's § 523(a)(6) claim – whether Vazquez's conduct was both "willful" and "malicious" within the meaning of § 523(a)(6). We disagree. The state court's fraudulent transfer determination and its associated findings established both willfulness and maliciousness for purposes of nondischargeability under § 523(a)(6).

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the

9

property of another entity." Both willfulness and maliciousness must be proven in order to apply § 523(a)(6). Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010).

In the context of § 523(a)(6), a debtor's conduct is willful only if he or she actually intended to cause injury or actually believed that injury was substantially certain to occur. Id.; In re Khaligh, 338 B.R. at 831. Both aspects of the willfulness standard inquire into the debtor's subjective state of mind, and both can be proven by circumstantial evidence. Carrillo v. Su (In re Su), 290 F.3d 1140, 1144-47 & n.6. (9th Cir. 2002); In re Khaligh, 338 B.R. at 831.

In the state court litigation, AAA stated a cause of action against Vazquez for actual fraudulent transfer. In that cause of action, AAA alleged that, by way of his transfer of substantially all of Alliance's assets to All Blueprint, Vazquez actually intended to hinder AAA's efforts to collect on the First State Court Judgment. These allegations are consistent with the elements for an actual fraudulent transfer under Cal. Civ. Code § 3439.04(a)(1), which applies to transfers made by a debtor "[w]ith actual intent to hinder, delay, or defraud" one of its creditors. Id.; see also Beverly v. Wolkowitz (In re Beverly), 374 B.R. 221, 235 (9th Cir. BAP 2007).

Moreover, the state court explicitly determined that Vazquez, in concert with Huerta, fraudulently transferred Alliance's assets, "virtually the entire business," to All Blueprint "for the sole purpose of hindering [AAA's] efforts to collect its judgment." State Court Minute Order (July 27, 2009),

10

at pp. 1-2. We agree with the bankruptcy court that the state court's finding regarding Vazquez's subjective motive for transferring Alliance's assets meets § 523(a)(6)'s willfulness requirement. In other words, the state court's finding that Vazquez sought to hinder AAA's collection efforts is tantamount to a finding that Vazquez intended to harm AAA by transferring all of Alliance's assets to All Blueprint.

In turn, with respect to malice, a debtor's conduct is malicious for purposes of § 523(a)(6) when the conduct "'involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" In re Ormsby, 591 F.3d at 1207 (quoting Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001)). "Malice may be inferred based on the nature of the wrongful act." Id.

Here, the state court explicitly found that Vazquez's conduct was wrongful. This wrongfulness, furthermore, is self-evident given the very nature of Vazquez's conduct in transferring Alliance's assets for the purpose of hindering AAA. The state court also found his conduct intentional. The intentional nature of Vazquez's conduct is reflected in the state court's account of Vazquez conspiring and plotting with Huerta to interfere with AAA's collection efforts. That the act of hindering AAA's collection efforts necessarily harmed AAA also is self-evident.

Nor is there any genuine doubt that Vazquez had no just cause or excuse for his conduct. He apparently asserted in the state court that he transferred Alliance's assets to All Blueprint because he desired to set up Huerta in a reprographics

11

business separate and independent from Alliance, but the state court in its findings unequivocally rejected this assertion. In any event, even if there had been any truth to this assertion, it would not as a matter of law constitute just cause or excuse for Vazquez's wrongful acts, given Vazquez's specific intent to harm AAA. See In re Sicroff, 401 F.3d at 1107 (holding that specific intent to injure negated proffered just cause or excuse for the debtor's wrongful conduct); see also Murray v. Bammer (In re Bammer), 131 F.3d 788 (9th Cir. 1997) (holding that debtor's subjective desire to help his mother out of her financial difficulties was not just cause or excuse for debtor's knowing participation in fraud against mother's creditors).

Vazquez has not raised on appeal any arguments implicating any public policy concerns associated with the bankruptcy court's application of issue preclusion against him. See generally In re Khaligh, 338 B.R. at 824-25. Nor has our review of the record brought to our attention any such policy concerns. To the contrary, the bankruptcy court's application of issue preclusion here strikes us as a commonplace and appropriate usage of the doctrine. Thus, we need not and will not remand for a public policy finding. See First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC. (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012) (citing Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001)) (stating that remand for further findings is unnecessary when the existing findings and record provide us with a "full understanding" of the questions subject to review).

Vazquez makes only one other argument in his appeal brief implicating the bankruptcy court's summary judgment ruling. He

12

argues that he was not aware that the state court's fraudulent transfer and intent findings might serve as grounds for excepting his debt to AAA from discharge under § 523(a)(6). We are perplexed by Vazquez's claimed ignorance that the state court's fraudulent transfer and intent findings were in play. He was represented by counsel during the entire course of the adversary proceeding, and the findings in question are featured prominently in both AAA's third amended complaint and in AAA's summary judgment papers.

While difficult to follow, Vazquez seems to believe that the state court's fraudulent transfer and intent findings could not properly serve as the factual predicate for an exception to discharge under § 523(a)(6) unless AAA's nondischargeability complaint also contained a fraudulent transfer claim for relief. Suffice it to say that we are not aware of any law or rule of procedure supporting Vazquez's novel belief.

In sum, Vazquez has not pointed us to any error in the bankruptcy court's determination that issue preclusion could be applied or to any abuse of discretion arising from the bankruptcy court's decision to impose issue preclusion as a basis for granting AAA's summary judgment motion. Accordingly, we will uphold the bankruptcy court's summary judgment ruling. See In re Khaligh, 338 B.R. at 831-32.[4]

[4]The state court's misappropriation of trade secrets findings and its alter ego findings possibly could serve as an alternate ground for affirming the bankruptcy court's issue preclusion and summary judgment rulings. However, in light of our decision based on the preclusive effect of the state court's fraudulent transfer findings, we do not need to reach this issue.

**B.    The Denial of the Reconsideration Motion**

Vazquez also argues in his appeal brief that the Second State Court Judgment was not a final decision for issue preclusion purposes because it was the subject of an appeal at the time the bankruptcy court granted summary judgment. Under California law, a judgment will not be given preclusive effect until the adverse party's appeal rights have been exhausted. See Abelson v. Nat. Union Fire Ins. Co., 28 Cal.App.4th 776, 787 (1994)(citing cases).

Vazquez raised this finality argument for the first time in his motion for reconsideration, which he filed after the bankruptcy court issued its summary judgment ruling. Consequently, this argument does not directly implicate or call into question the bankruptcy court's summary judgment ruling. The record reflects that neither party advised the bankruptcy court at or before the time it ruled on AAA's summary judgment motion that there was a pending state court appeal from the Second State Court Judgment. To the contrary, Vazquez's summary judgment opposition explicitly conceded, without discussion, the issue of finality. We cannot review the summary judgment ruling based on facts not presented to the bankruptcy court at or before the time it rendered its ruling. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988).

As a result, Vazquez's finality argument only is relevant to our review of the bankruptcy court's denial of Vazquez's reconsideration motion. But before we conduct that review, as a threshold matter, we note that it is questionable whether Vazquez

14

is entitled to that review, because his notice of appeal only referenced the summary judgment ruling.[5]

It also is far from clear that the parties have provided us with a record sufficient to enable us to conduct a meaningful review of the order denying reconsideration. That order explicitly based its denial on "the reasons stated on the record in open court." And yet we have no idea what reasons or findings the bankruptcy court relied upon in denying the reconsideration motion because neither party obtained the transcript from the hearing on the reconsideration motion. This makes our task of reviewing the denial of the reconsideration motion virtually impossible, particularly under the abuse of discretion standard of review, which requires us to consider the law applied by the bankruptcy court and its factual findings. Hinkson, 585 F.3d at 1262. Under these circumstances, we may exercise our discretion to summarily affirm the denial of the reconsideration motion. See Kyle v. Dye (In re Kyle), 317 B.R. 390, 393 (9th Cir. BAP 2004), aff'd, 170 Fed. Appx. 457 (9th Cir. 2006).

Even if we were to attempt to conduct a review of the denial of the reconsideration motion, we are convinced that Vazquez would not prevail. Having accessed the bankruptcy court's adversary proceeding docket and having reviewed the parties' papers relating to the reconsideration motion, Vazquez in essence moved for reconsideration based on the "new evidence" of the pending state court appeal. When, as here, the so-called newly

---

[5]Nonetheless, we acknowledge that notices of appeal should be liberally construed, particularly those filed by pro se appellants. Smith v. Barry, 502 U.S. 244, 248–50 (1992); Brannan v. United States, 993 F.2d 709 (9th Cir. 1993).

15

discovered evidence (Vazquez's knowledge of his own pending state court appeal) was or should have been readily available to the movant before the trial court issued the ruling in question, the trial court properly could deny reconsideration. See Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997-98 (9th Cir. 2001).

As a separate and independent ground for affirming the denial of the reconsideration motion, any error by the bankruptcy court with respect to the denial of the reconsideration motion was harmless, and we must ignore harmless error. See Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 355 (9th Cir. BAP 2012).

As set forth above, the reconsideration motion focused on the pending state court appeal from the Second State Court Judgment. Any error concerning the denial of the reconsideration motion was harmless because, after the bankruptcy court entered judgment, the California Court of Appeal affirmed the Second State Court Judgment, and the California Supreme Court denied review. Consequently, even if we were to reverse based on the formerly non-final nature of the Second State Court Judgment under California issue preclusion law, that judgment is now final for issue preclusion purposes, and the bankruptcy court would be free upon remand to re-enter summary judgment based on issue preclusion.

The interests of justice would not be served by our remanding just so the bankruptcy court could grant summary judgment again given that the former finality defect has now been cured. See generally Nash v. Clark Cnty. Dist. Atty's. Office (In re Nash), 464 B.R. 874, 879 (9th Cir. BAP 2012) (declining to remand when such remand would not serve the interests of

16

justice).

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's grant of summary judgment against Vazquez and its denial of Vazquez's reconsideration motion.